## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**KIETH A. TAYLOR**,

     Plaintiff,

       v.

**NCR CORPORATION; THE RETIREMENT PLAN FOR OFFICERS OF NCR; COMPENSATION & HUMAN RESOURCES COMMITTEE OF THE BOARD OF DIRECTORS**

     Defendants.

Case No.

## COMPLAINT

**COMES NOW,** Keith A. Taylor ("Plaintiff") by and through his counsel, and complaining against the NCR Corporation ("NCR" or the "Company"), The Retirement Plan for Officers of NCR (the "Plan") and the Compensation & Human Resources Committee of the Board of Directors (the "Committee") (collectively the "Defendants") and shows the Court as follows:

## Jurisdiction & Venue

1.      Jurisdiction in this matter is premised upon the Employee Retirement Income Security Act of 1974 ("ERISA"), specifically, 29 U.S.C. §§1132(e)(1) and

1132(f). These provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

2.     Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391, inasmuch as the actions upon which the claims are predicated occurred within this district and Defendants may be found in this district. Additionally, the Plan is administered in this district.

<u>**The Parties**</u>

3.     At all times relevant to this action, Plaintiff was, and remains, a resident of Oregonia, Ohio.  Prior to his retirement from NCR in March 2006, Plaintiff was employed by the Company in a management position for approximately 21 years.

4.     Defendant The Retirement Plan for Officers of NCR  is, upon information and belief, an employee pension benefit plan as that term is defined by Section 3(2) of the ERISA, 29 U.S.C. §1002 (2), and more specifically a non-qualified Top Hat Plan.  The Plan is sponsored and maintained by the  Company, which also funds the benefits out of its general assets.   The purpose of the Plan is to "provide for the payment of supplemental retirement benefits to executives of the Company in order to attract and retain executives of superior ability, industry

and loyalty." The Plan may be served through the Plan Administrator at 3097 Satellite Blvd. Building700, Duluth, GA 30096.

5.    The named Plan Administrator responsible for making determinations with respect to Plaintiff's claims is defined as the "Compensation and Human Resource Committee of the Board of Directors. The Committee may be served at 3097 Satellite Blvd. Building, 700, Duluth, GA 30096.

6.    Defendant NCR Corporation. is a Maryland corporation that is licensed to do business in this State, with its principle place of business in Duluth, Georgia.  NCR Corporation may be served through their registered agent CT Corporation System, 1201 Peachtree Street N.E. Atlanta, GA 30361.

## Nature of the Complaint

7.    Incident to his employment, Plaintiff was a "participant" in the Plan as defined by 29 U.S.C. §1002(7). Plaintiff seeks a clarification of his rights and benefits under the terms of the Plans pursuant to 29 U.S.C. §1132(a)(1)(B). Plaintiff also seeks civil penalties for the Plan Administrator's failure to provide requested documents under ERISA Section 104(b)(4). Plaintiff is also seeking an award of attorney fees pursuant to 29 U.S.C. §1132(g).

8.    Plaintiff was employed by NCR from February 20, 1985 until his retirement from the Company on March 31, 2006.  During his tenure, Plaintiff held

various positions with increasing levels of responsibility in Finance and Administration, from Accounting Supervisor to Assistant Treasurer. At the time of his retirement Plaintiff was the Senior Vice President, Financial Solutions Division.

9.      In November, 1999, Plaintiff became a participant in the Plan, which was represented as a non-qualified pension plan for senior officers of NCR. The Plan was intended to pay supplemental retirement benefits to certain officers of the Company, and was always understood to be part of the executives' compensation packages. Additionally, this benefit was an important part of the executives' overall retirement package provided by NCR, and played an important role in recruiting and retaining executives, such as Plaintiff.

10.     Throughout the course of his employment with NCR, Plaintiff received periodic statements regarding the value of his retirement benefits under various NCR retirement plans, including the Plan. Plaintiff relied on these statements in planning for his retirement, and in deciding to continue his career with NCR.

11.     Plaintiff retired from NCR on March 31, 2006, after completing 21.2 years of service. At the time of his retirement, he had a fully vested interest in his pension benefit under the Plan. Following his retirement, Plaintiff received a final statement of his accrued benefit under the Plan, and the forms necessary to

elect a pension benefit under the Plan.  Plaintiff elected a joint and 100% survivor annuity benefit based on the representation that he and his wife would receive an annual benefit of $29,062.80 for their lives, which under the terms of the Plan was to be paid in monthly installments.  Plaintiff elected the joint and 100% survivor benefit, even though it resulted in a much lower monthly benefit, to ensure that his wife would have adequate income in the event he predeceased her.

12.    On November 29, 2006 Plaintiffs received a letter from NCR confirming that he would receive an annual benefit equal to $29,062.80, which would be payable bi-weekly, in the form of a 100% joint and survivor annuity. Plaintiff relied on the statements provided to him throughout the course of his employment, and the final benefit statement amount in planning for his retirement, which included ensuring that his wife would be taken care of in the event he predeceased her.

13.    From approximately December 2006 through April 2014, Plaintiff received bi-weekly payments from the Plan equal to $2,421.90 per month.

14.    On or about April 12, 2013 Plaintiff received a letter from NCR indicating that the Company had terminated "NCR's nonqualified pension plans . . . effective February 25, 2013."  The correspondence advised that NCR would issue a "lump sum payment equal to the actuarial present value of [Plaintiff's] unpaid accrued benefit under the plan(s) on April 25, 2014."   The correspondence

indicated that the value of Plaintiff's lump sum payment before the withholding of taxes was $370,236.01. Additionally, the correspondence indicated that Plaintiff would receive a lump sum payment equal to $70,739.87 as payment for the joint and survivor annuity component of the benefit.

15.    Article VI of the Plan provides "A Participant who retires at or after his or her 65th birthday shall be entitled to receive monthly benefits under the Plan in an amount equal to (a) 2.5% of the Participant's Career Average Monthly Salary multiplied by the number of years of Service, minus (b) The Pension Plan Benefit. The pre-January 1, 2013 version of the Plan did not permit for mandatory lump sum distributions.

16.    Article X of the Plan provides in relevant part as follows:   "The Committee shall have the right, without the consent of any Participant, former Participant, Spouse or any other person claiming under or through a Participant or former Participant, to amend or modify the Plan or any agreement between the Company and any Participant thereunder from time to time or to terminate or repeal the Plan or any such agreement entirely at any time; provided, however, that (a) no such action shall adversely affect any Participant's, former Participant's or Spouse's accrued benefits prior to such action under the Plan or the benefits payable under Appendix A.

17.    Payment of Plaintiff's benefit in a lump sum results in significant adverse tax consequences. Paying the benefit in a single tax year, will result in approximately $186,916 being withheld for federal and state income taxes, which results in a total lump sum benefit of $254,063.00.

18.    To purchase an annuity with the a lump sum value of $254,063, would result in a benefit equal to approximately $1,152 per month, which represents 52.4% reduction in the value of Plaintiff's accrued benefit under the Plan.

19.    It would cost approximately $534,110 to purchase an annuity that would replicate Plaintiff's monthly benefit under the Plan of $2,422.

20.    Plaintiff filed a claim with the Plan Administrator on or about June 7, 2013 challenging the Company's decision to terminate the Plan on the basis that the lump sum payment of the benefit "adversely affected" Plaintiff's accrued benefit under the Plan, as evidenced by that fact that, *inter alia*, the lump sum payment after taxes, and use of a 5% present value reduction factor, resulted in a 52.5% reduction in Plaintiff's monthly pension benefit under the Plan.

21.    On or about July 18, 2013 the  Plan Administrator denied Plaintiff's claim for benefits, finding that the termination of the Plan and payment of the benefit in a lump sum did not adversely affect Plaintiff's accrued benefit under the Plan.   In rendering its determination the Plan Administrator did not make

individual determinations with respect to each claimant, as required by the Plan, but instead relied on template arguments that were developed by the Company's legal counsel and applied to all claimants regardless of the facts and circumstances.

22.   In denying Plaintiff's claim for benefit under the Plan the Plan Administrator  was operating under a significant conflict of interest because Plan benefits were funded out of the general assets of the Company.  According to the Company's financial filings it saved approximately $95,000,000 when it terminated the Plan and paid the benefits out in the form of lump sum distributions.

23.   On July 26, 2013 counsel for Plaintiff sent a letter to the Plan Administrator   advising them of the representation and requesting various documents under 29 U.S.C §1024(b)(4) and the claim regulations, 29 C.F.R. §2560.503. On August 2, 2013 counsel sent a second letter to the Plan Administrator  clarifying the scope of documents that were being requested, specifically with respect to current and former Plan document.

24.   On or about August 14, 2013 counsel for Plaintiff emailed  Patrick Carroll ("Mr. Carroll"), who was acting on behalf of the Plan Administrator, to request a 30-day extension of the appeal period, because the requested documents had not been provided, and to inquire about the status of the documents.   Mr. Carroll  granted the extension in a return email of the same date, and indicated that a formal response to the document request would be forthcoming.

25.    On September 17, 2013 counsel for Plaintiff sent a letter to the Plan Administrator again requesting copies of the documents originally requested on July 26, 2013, and requesting an additional 30-day extension on the basis that Plaintiff's counsel could not prepare an appeal without the requested documents, which included the Plan and administrative record.

26.    In an email dated September 17, 2013 Mr. Carroll responded on behalf of the Plan Administrator  indicating he would consent to the additional 30-day extension of the appeal period and would provide the requested documents the same day.

27.    In a letter dated September 18, 2013 the Mr. Carroll, acting on behalf of the Plan Administrator, responded to Plaintiff's request for documents, but failed to provide all of the requested Plan documents. Specifically,   the Plan Administrator  failed to provide copies of the Subscription Agreements between Mr. Taylor and the Plan per Article V; the applicable NCR Pension Plan provisions which are cross referenced in the Plan pertaining to, inter alia, applicable actuarial assumptions, Section 8.3 of the Pension Plan pertaining to delegation of authority and any documents effectuating a delegation; trust agreements; and summary plan description or other document describing benefits to participants; filings with the IRS/DOL regarding Plan's nonqualified status; contracts with Plan and its service

providers; and an executed copy of the resolution and amendment terminating the Plan.

28.    The Plan Administrator's September 18, 2013 document request response also failed to provide copies of the February 20, 2013 Plan Administrator Meeting Minutes and the Aon Hewitt excel spreadsheet detailing lump sum payments comparisons; May 12, 2013 Plan Administrator Meeting Minutes Exhibits A, B and C; May 12, 2013 Plan Administrator Meeting Minutes Exhibits A, B, C and D; the draft template claim letters discussed in the June 11, 2013 meeting; July 9, 2013, and July 16, 2013 Meeting Minutes. In addition, the Meeting Minutes that were provided contained extensive redactions, some of which include discussions of the various claims and legal defenses to such claims, which are were relevant to Mr. Taylor's claim since these matters were discussed in the overall context of his claim as well as other participants, and were instrumental in the Committee's ultimate determination.

29.    The failure to provide a complete copy of the requested Plan documents and a complete and un-redacted copy of the administrative record resulted in Plaintiff being denied a full and fair review under the Plan.

30.    Under cover of letter dated November 19, 2013, and without the benefit of all of the documents requested by counsel on July 17, 2013, Plaintiff submitted his appeal to the Plan Administrator.

31.     In a letter dated January 16, 2014, the Plan Administrator  advised Plaintiff that it was taking a 60-day extension of the appeal period.  Although the Plan is administered in Duluth, Georgia the letter was sent by NCR's outside counsel who is located in Washington, D.C.

32.     In a letter dated March 13, 2014 the Plan Administrator advised Plaintiff that it would be distributing his account balance under the Plan in a lump sum on April 25, 2014.

33.     In a letter dated March 18, 2014 the Plan Administrator  denied Plaintiff's appeal under the Plan.   In issuing its determination, the Plan Administrator  ignored many of the substantive arguments raised in Plaintiff's appeal. Upon information and belief, the letter communicating the appeal determination was a template letter that was used for all claimants regardless of their individual facts and circumstances.  Upon information and belief the template denial letters were drafted by NCR's outside counsel months before the Plan Administrator issued its actual decision on Plaintiff's claim, and was mailed out from outside counsel's offices in Washington, D.C.

34.     In a letter dated March 31, 2014 Plaintiff's counsel requested a complete copy of the administrative record pertaining to Plaintiff's appeal.   On May 16, 2014, Plaintiff's counsel sent another letter to the Plan Administrator inquiring about the status of the March 31, 2014 document request.  In an email of

the same date, Mr. Carroll, on behalf of the Plan Administrator, advised counsel that it was forwarding the request to outside counsel for response. On June 10, 2014 counsel emailed Mr. Carroll again inquiring about the status of the requested documents. Mr. Carroll responded this same date and advised the documents would be sent out the same day by outside counsel.

35.    In a letter dated June 11, 2014, the Company's outside counsel transmitted the administrative record pertaining to Plaintiff's appeal. The record produced by outside counsel contained meeting minutes from the Committee which contained extensive redactions, some of which pertained to deliberations involving Plaintiff's appeal. Additionally, outside counsel for the Company also provided a "privilege log" for documents that were generated in the administrative process, but were withheld under a claim of attorney client privilege.

36.    The administrative record that was belatedly produced by the Company's outside counsel again reflects that the denial of Plaintiff's appeal was based on pre-formulated rationales crafted by outside counsel, and which did not take into consideration the individual facts and circumstances of Plaintiff's appeal. Additionally, the Plan Administrator's appeal determination again ignored several of the substantive arguments raised in Plaintiff's appeal.

37.    In rendering a determination on Plaintiff's appeal the Plan Administrator was operating under a significant conflict of interest.

## COUNT I – VIOLATION OF ERISA SECTIONS 104(b)(4) & 1132(c)

38.   Plaintiff incorporates the allegations contained in Paragraphs 1 through 36 of the Complaint as if the same were set forth herein.

39.   ERISA Section 104(b)(4), 29 U.S.C. §1024(b)(4), provides in relevant part that a plan "administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."

40.   ERISA Section 502(c)(1)(B), 29 U.S.C. §1132(c)(1)(B), provides in relevant part who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $110 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

41.     Plaintiff, through counsel, requested copies of various Plan documents from the Plan Administrator under cover of letter dated July 26, 2013. Approximately 52 days later the Plan Administrator  responded to Plaintiff's request for documents but failed to provide the following requested documents: Subscription Agreements between Mr. Taylor and the Plan per Article V; the applicable NCR Pension Plan provisions that are cross referenced in the Plan pertaining to, *inter alia*, applicable actuarial assumptions, Section 8.3 of the Pension Plan pertaining to delegation of authority and any documents effectuating a delegation; trust agreements; and summary plan description or other document describing benefits to participants; filings with the IRS/DOL regarding Plan's nonqualified status; contracts with Plan and its service providers; and an executed copy of the resolution and amendment terminating the Plan.

42.     To date the Plan Administrator has not provided copies of the documents Plaintiff requested on July 26, 2013.

43.     Plaintiff is entitled to a civil penalty in the amount of $110.00 per day from August 26, 2013 through date of judgment.

44.     Despite having raised the failure to provide these requested documents in his appeal submission, the Plan Administrator failed to address this claim.  Therefore, Plaintiff's document penalty claim is deemed exhausted.

## COUNT II – CLAIM FOR BENEFITS
## UNDER THE PLAN

45.    Plaintiff incorporates the allegations contained in Paragraphs 1 through 36 of the Complaint as if the same are set forth herein.

46.    ERISA Section 502(a)(1)(B) provides in relevant part that a  civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

47.     Article VI of the Plan provided in relevant part that a participant with a vested account was entitled to a retirement benefit payable bi-weekly over the life of the retiree and his/her spouse. The pre-2013 Plan specifically precluded the distribution of a participant's vested account balance in the form of a lump sum benefit.

48.    Article X of the Plan allows the Committee to amend or terminate the Plan provided that the amendment or termination does not "adversely affect any Participant's, former Participant's or Spouse's accrued benefits prior to such action under the Plan."

49.    The Committee purportedly amended the Plan effective January 1, 2013 to terminate it and authorize the payment of the participants' accrued benefit in the form of a lump sum.    In connection with this action, the Committee

authorized the use of a 5% present value reduction factor to calculate the lump sum benefits, as well as other actuarial assumptions, which have not been disclosed.

50.     The Committee's decision to amend the Plan to provide for the payment of participant's accrued benefit deprived Plaintiff of the benefit of having his retirement income paid in bi-monthly installments over his life and the life of his spouse.

51.     The Committee's decision to amend the Plan to provide for the payment of participant's accrued benefit in a lump sum has resulted, or will result, in Plaintiff incurring a significant taxable event, which when combined with other factors will reduce the value of his accrued benefit under the Plan by approximately 52%.

52.      The Committee's determination that the amendment of the Plan and payment of benefits in a lump sum did not adversely affect Plaintiff's accrued benefit under the Plan is *de novo* wrong.

53.     Plaintiff has fully exhausted his administrative remedies under the Plan relative to this claim.

## COUNT III – ATTORNEY FEES

54.      Plaintiff incorporates herein the allegations contained in Paragraphs 1 through 36 of the Complaint.

55.     As a result of Defendants failure to pay the benefits due and owing under the terms of the Plans, Plaintiff was required to retain legal counsel to obtain his benefits and/or a clarification of his rights.

56.     Under ERISA Section 502(g), 29 U.S.C. §1132(g), Plaintiff is entitled to recover his reasonable attorney fees for the filing of this action.

57.     Defendants have the ability to satisfy an award of attorney fees.

58.     Plaintiff's claims herein will inure to the benefit of all Plans participants, inasmuch as it will deter the Company from violating the provisions of ERISA relative to subsequent claims asserted under the Plans.

## **PRAYER FOR RELIEF**

 **WHEREFORE,** Plaintiff respectfully prays that the Court:

A) Declare, adjudge and decree that Plaintiff is entitled to the benefits promised under the terms of the Plans;

B) Award Plaintiff the full amount of benefits due and owing under the terms of the Plans, plus prejudgment interest running from the date such benefits were due and owing until judgment;

C) Award Plaintiff reasonable attorney fees and costs for pursuing this action; and

D) Award such other relief as the Court deems just and reasonable.

Respectfully submitted this 14th day of July, 2014.

<u>*s/ Michael G. Monnolly*</u>
Michael G. Monnolly
Monnolly / Pridgen, LLC
Tower Place
3340 Peachtree Road, Suite 1800
Atlanta, GA 30326
Telephone: (404)  474-4621
mike@mcmlaw.co

*Attorneys for Plaintiff Keith A.*
*Taylor*