IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KEITH A. TAYLOR,

                **Plaintiff,**

    v.                                **1:14-cv-2217-WSD**

NCR CORPORATION; THE
RETIREMENT PLAN FOR
OFFICERS OF NCR; PLAN
ADMINISTRATION
COMMITTEE,

                **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants NCR Corporation, The Retirement Plan for Officers of NCR ("The Retirement Plan"), and Plan Administration Committee's ("Committee") (together, "NCR") Motion to Dismiss [7] Plaintiff Keith A. Taylor's ("Taylor") First Amended Complaint ("FAC") [3].

## I.    BACKGROUND

Taylor was an employee of NCR for approximately 21 years. (FAC ¶ 3). In November 1999, he became a participant in NCR's Retirement Plan for Officers of

NCR ("the Plan").  (Id. ¶ 9).  The Plan was a non-qualified "top hat"[1] plan for senior officers of NCR.  (Id. ¶¶ 4, 9).  The Plan was intended to "provide for the payment of supplemental retirement benefits to executives" of NCR.  (Id. ¶ 4).

Taylor retired from NCR on March 31, 2006.  (Id. ¶ 11).  Pursuant to the Plan, Taylor elected a joint and 100% survivor annuity benefit so that he and his wife would receive an annual benefit of $29,062.80 for their lives, which, under the terms of the Plan was to be paid in monthly installments.  (Id.).  NCR began making bi-weekly payments to Taylor beginning around December 2006.  (Id. ¶ 13).

On or about April 12, 2013, NCR informed Taylor that it had terminated the Plan effective February 25, 2013, and that Taylor would receive a lump sum payment "equal to the actuarial present value of [his] accrued benefit under the plan(s) on April 25, 2014"  (Id. ¶ 14).  NCR's correspondence indicated that Taylor's lump sum payment value before taxes was $370,236.01, and Taylor would be paid an additional $70,739.87 for the joint and survivor annuity component of the benefit.  (Id. ¶ 14).  The total lump sum payment was

---

[1]    An ERISA top hat plan is any "plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees."  ERISA § 201(2), 29 U.S.C. § 1051(2).

$440,975.88.  After federal and state income taxes were withheld, the remaining value of the lump sum was $254,063.00.  (Id. ¶ 18).

> Article X of the Plan provides in relevant part as follows:

> The Committee shall have the right, without the consent of any Participant, former Participant, Spouse or any other person claiming under or through a Participant or former Participant, to amend or modify the Plan or any agreement between the Company and any Participant thereunder from time to time or to terminate or repeal the Plan or any such agreement entirely at any time; provided, however, that (1) no such action shall adversely affect any Participant's, former Participant's or Spouse's accrued benefits prior to such action under the Plan or the benefits payable under Appendix X.

(Id. ¶ 17).  Taylor alleges that on or about March 19, 2013, NCR "restate[d] the Plan with an effective date of January 1, 2013."  (Id. ¶ 15).  Taylor also alleges that "[t]he pre-January 1, 2013 version of the Plan did not permit for mandatory lump sum distributions," and that "the restated Plan contains numerous additional provisions that were not effectuated through an amendment to the Plan in accordance with Article X, and are therefore invalid."  (Id. ¶¶ 15, 16).

On or around June 7, 2013, Taylor filed a claim with the NCR SERP Plan Administrator ("Plan Administrator").  (Id. ¶ 21).  Taylor challenged NCR's decision to terminate the Plan on the grounds that the lump sum payment "adversely affected" his accrued benefit because federal and state income tax consequences, and the use of a "5% present value reduction factor, resulted in a

52.5% reduction in Taylor's monthly pension benefit under the Plan." (Id.). On or around July 18, 2013, the Plan Administrator denied Taylor's benefit claim, finding that the termination of the Plan and payment of the benefit in a lump sum did not adversely affect Taylor's accrued benefit under the Plan. (Id. ¶ 22).

On July 26, 2013, Taylor's counsel sent a letter to the Plan Administrator "requesting various documents under 29 U.S.C. § 1024(b)(4) and the claim regulations, 29 C.F.R. § 2560.503." (Id. ¶ 24). On September 18, 2013, the Plan Administrator responded, "but failed to provide all of the requested Plan documents." (Id. ¶¶ 28, 29, 43).

On November 19, 2013, Taylor submitted his appeal, which was denied by the Plan Administrator on March 18, 2014. (Id. ¶¶ 32, 35). On July 14, 2014, Taylor initiated the instant action [1], and on October 16, 2014, submitted his FAC. Taylor seeks statutory penalties under ERISA § 502(c) for NCR's alleged failure to timely provide him information he requested, as allegedly required by ERISA § 104(b)(4) ("Count One"). (Id. ¶¶ 41-44). Taylor also brings a claim under ERISA § 502(a)(1)(B) to "recover benefits due to him under the terms of his plan [and] to enforce his rights under the terms of the plan" ("Count Two"). (Id. ¶ 48). In Count Two, Taylor alleges that the "Committee's decision to amend the Plan to provide for the payment of participant's accrued benefit in a lump sum has

resulted, or will result, in Plaintiff incurring a significant taxable event, which when combined with other factors will reduce the value of his accrued benefit under the Plan by approximately 52%." (Id. ¶ 53).  The only other specific factor Taylor alleges in his FAC is a "5% present value reduction factor to calculate the lump sum benefits." (Id. ¶ 51, see also id. ¶ 21).[2]  Taylor claims the Committee's decision adversely affected his benefits in violation of Article X of the Plan. Article X, Taylor claims, granted the Committee the right to amend or modify the Plan, provided that "no such action shall adversely affect [a Participant's] accrued benefits . . . ." (Id. ¶¶ 17, 18).

On November 10, 2014, NCR filed its motion to dismiss.  NCR argues Taylor's claims should be dismissed because (1) statutory penalties under ERISA Section 104 do not apply to top hat plans, (2) a tax impact is not part of an accrued benefit under ERISA, and (3) NCR Corporation and The Retirement Plan for Officers of NCR must be dismissed from the lawsuit because Taylor's claims can only be asserted against the "administrator" of a plan, and only the Committee is the "administrator."  On December 8, 2014, Taylor filed his response [10] to NCR's motion to dismiss.

---

[2]     Taylor also references "other actuarial assumptions, which have not been disclosed." (FAC ¶ 51).

## II.     DISCUSSION

### A.     Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, the Court must "assume that the factual allegations in the

complaint are true and give the plaintiff[] the benefit of reasonable factual

inferences."  Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir.

2010).  Although reasonable inferences are made in the plaintiff's favor,

"'unwarranted deductions of fact' are not admitted as true."  Aldana v. Del Monte

Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water

Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996)).  Similarly, the

Court is not required to accept conclusory allegations and legal conclusions as true.

See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010)

(construing Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly,

550 U.S. 544 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  Mere "labels and

conclusions" are insufficient.  Twombly, 550 U.S. at 555.  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."
Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  This requires more than
the "mere possibility of misconduct."  Am. Dental, 605 F.3d at 1290 (quoting
Iqbal, 556 U.S. at 679).  The well-pled allegations must "nudge[] their claims
across the line from conceivable to plausible."  Id. at 1289 (quoting Twombly, 550
U.S. at 570).

> B.   Taylor's Request for Statutory Penalties for NCR's Alleged Failure to
>       Provide Requested Information

Count One of the FAC asserts a claim for civil statutory penalties under
ERISA § 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B), alleging that the Plan
Administrator failed to comply with ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4),
by not responding to Taylor's document request within thirty (30) days.  (See FAC
¶¶ 41, 42).  NCR argues that, because ERISA Section 104 does not apply to top hat
plans, Plaintiff's claim for statutory penalties must be dismissed.  (Mot. to Dismiss
at 7-12).

ERISA § 104(b)(4) provides that "the administrator shall, upon written
request of any participant or beneficiary, furnish a copy of the latest updated
summary, plan description, and the latest annual report, [etc.] . . . ."  29 U.S.C.

§ 1024(b)(4).  ERISA § 502(c)(1)(B) provides, in relevant part, that any

administrator

> who fails or refuses to comply with a request for any information
> which such administrator is required by this subchapter to furnish to a
> participant or beneficiary (unless such failure or refusal results from
> matters reasonably beyond the control of the administrator) by
> mailing the material requested to the last known address of the
> requesting participant or beneficiary within 30 days after such request
> may in the court's discretion be personally liable to such participant or
> beneficiary in the amount of up to $100 a day from the date of such
> failure or refusal, and the court may in its discretion order such other
> relief as it deems proper.

29 U.S.C. § 1132(c)(1)(B).

ERISA § 110, authorizes the Secretary to promulgate regulations

"prescrib[ing] an alternate method for satisfying any requirement" of part 1 of

ERISA title I, of which Section 104(b)(4) is part.  See 29 U.S.C. § 1030.  The

Secretary has promulgated regulations pursuant to ERISA § 110.  29 C.F.R.

§ 2520.104-23 (the "Regulations").  The Regulations allow the administrator of a

top hat plan to "satisfy the reporting and disclosure provisions of part 1 of title I of

the Act by (1) Filing a statement with the Secretary of Labor . . . [and]

(2) Providing plan documents . . . to the Secretary upon request."  29 C.F.R.

§ 2520.104-23(b).  The Regulations exempt top hat plans from ERISA's disclosure

requirements.  See Simpson v. Mead Corp., 187 Fed. App'x 481, 484 (6th Cir.

2006) ("[T]op hat plans are exempted from ERISA's reporting and disclosure requirements but subject to administrative regulations." (quotations and citation omitted)); In re New Valley Corp., 89 F.3d 143, 149 (3d Cir. 1996) (top hat plans are exempted from "ERISA's reporting and disclosure requirements upon promulgation of the proper administrative regulations").  Accordingly, the Regulations "impose[] . . . no obligation whatsoever to disclose plan instruments to participants or beneficiaries."  Dorsey v. Aetna Life Ins. Co., Civ. No. 2:12cv90, 2013 WL 1288165, at *22 (E.D. Va. Mar. 26, 2013); see also Demery v. Extebank Deferred Comp. Plan (B), 216 F.3d 283, 290 (2d Cir. 2000) ("[A] top hat plan is deemed to have satisfied the reporting and disclosure requirements of ERISA, including the furnishing of a summary plan description and annual reports to plan beneficiaries, by filing a short statement with the Secretary of Labor and providing plan documents to the Secretary upon request.").

Taylor bases Count 1 exclusively on ERISA §§ 104 and 502.  (FAC ¶¶ 40-46).  As discussed above, these sections do not apply to top hat plans. Taylor does not dispute that the Plan is a top hat plan.  (Id. ¶ 4  ("Defendant The Retirement Plan for Officers of NCR is . . . a non-qualified Top Hat Plan"); Resp. at 19 ("[T]his dispute involves a terminated top hat plan.")).  The FAC does not

allege that the Plan failed to comply with a Department of Labor request for documents.[3]

Taylor argues that NCR bears the burden of establishing that it has complied with the terms of the Regulations.  (Resp. at 9-10).  However, Taylor's FAC does not allege that NCR did not comply with the Regulations, and this argument is therefore not properly before the Court and the Court will not consider it.  See Huls v. Llabona, 437 Fed. App'x 830, 832 n.4 (11th Cir. 2011) (per curiam) (argument not properly raised where plaintiff asserted it for the first time in response to defendant's motion to dismiss instead of seeking leave to file an amended complaint); Jiles v. PNC Bank Nat. Ass'n, No. 5:10-cv-180-CAR, 2012 WL 3241927, at *5 (M.D. Ga. Aug. 7, 2012) (court not required to consider new allegation raised for the first time in response to defendant's motion to dismiss and not raised in complaint or amended complaint); cf. Gilmour v. Gates, McDonald &

---

[3]     The FAC contains a handful of references to the Regulations.  It states: "[o]n July 26, 2013 counsel for Plaintiff sent a letter to the Plan Administrator . . . requesting various documents under 29 U.S.C. § 1024(b)(4) and the claim regulations, 29 C.F.R. § 2560.503.  (FAC ¶ 24).  It also references requested "filings with the IRS/DOL regarding Plan's nonqualified status."  (Id. ¶¶ 28, 43-44).  These references are tied to Taylor's claim for statutory damages under ERISA §§ 104 and 502, which do not apply to top hat plans.  The references to the Regulations cannot reasonably be construed as plausibly pleading an alternative basis for penalties.  See Bornstein v. County of Monmouth, Civ. No. 11-5336, 2015 WL 2125701, at *7 (D.N.J. May 6, 2015) (a single reference and other "stray remarks are insufficient to provide the requisite notice . . . under the familiar Iqbal/Twombly pleading standards").

Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("[P]laintiff may not amend her complaint through argument in a brief opposing summary judgment.").

Even if this issue is properly before the Court—which the Court considers it is not—ERISA § 502(c) only authorizes penalties for a plan administrator's refusal "to comply with a request for any information which such administrator is required by *this* subchapter to furnish."  29 U.S.C. § 1132(c)(1)(B) (emphasis added). Other courts have held that Section 502(c) does not provide for penalties for a plan administrator's failure to comply with regulations.  See Wilczynski v. Lumbermens Mut. Cas. Co., 93 F.3d 397, 406 (7th Cir. 1996) (holding that the sanctions of Section 502(c) cannot be imposed for violation of an agency regulation); Groves v. Modified Ret. Plan, 803 F.2d 109, 118 (3d Cir. 1986) ("Because § 502(c) authorizes penalties only for breach of duties imposed by 'this subchapter,' such sanctions cannot be imposed for violation of an agency regulation."); Brucks v. Coca-Cola Co., 391 F. Supp. 2d 1193, 1212 (N.D. Ga. 2005) ("In the absence of Eleventh Circuit authority on this issue, the Court declines to rewrite [ERISA § 502(c)] to authorize statutory penalties against an

administrator for failure to provide documents other than those identified in the statute itself.").[4]

Even if the Court construed Taylor's FAC as stating a claim for statutory damages based on NCR's failure to comply with the Regulations—and even if the Court found that Section 502(c) provides for penalties for a plan administrator's failure to comply with the Regulations—Taylor's claim would fail because NCR appears to have complied with the Regulations by making the required filing with the Department of Labor.  (Reply Br. [11] at Ex. A).  Top hat plan filings are publicly available from the Department of Labor.  See DOL, Emp. Benefits Sec. Admin., *How to Obtain Employee Benefit Plan Documents From DOL*, http://www.dol.gov/ebsa/publications/how_to_obtain_docs.html.  No serious

---

[4]      In Hamall-Desai v. Fortis Benefits Ins. Co., 370 F. Supp. 2d 1283, 1312-14 (N.D. Ga. 2004), the Court assessed statutory penalties under ERISA § 502(c) against an administrator for failure to provide the claimant with certain documents, citing these failures as violations of a regulation.  In Ferree v. Life Ins. Co. of N. Am., the Court noted that Hamall-Desai "did not expressly address whether a failure to provide 'pertinent' documents under ERISA's implementing regulations constituted a failure to provide information 'required by this subchapter' . . ."  No. 1:05-cv-2266-WSD, 2006 WL 2025012, at *5 n.9 (N.D. Ga. July 17, 2006).  The Hamall-Desai decision "appears to have relied on the fact that the regulation [at issue] 'was promulgated' by the Secretary of Labor pursuant to 29 U.S.C. § 1132. [ERISA § 502]"  Id.  Here, the Regulations were promulgated pursuant to ERISA § 110, not ERISA § 502, and, even if the FAC alleged NCR failed to comply with the Regulations, the Court would decline to extend its Hamall-Desai decision to the case at hand.

question as to the authenticity of the filing can exist, and the Court takes judicial notice of NCR's filing with the Department of Labor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 355 (2007) (on a motion to dismiss, court must consider the complaint and matters of which it may take judicial notice); Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1276-78 (11th Cir. 1999) (court may take judicial notice of official public records and may base its decision on a motion to dismiss on the information in those records); see also Belmonte v. Examination Mgmt. Servs., Inc., No. 05 C 3206, 2007 WL 551578, at *1 n.2 (N.D. Ill. Feb. 16, 2007) (taking judicial notice that defendant filed a top hat plan statement with the Department of Labor).

Because the Plan is a top hat plan, NCR was not required by ERISA § 104 to furnish any documents to Taylor.  Taylor does not allege any alternate basis for statutory penalties under ERISA.  Accordingly, Count I is required to be dismissed.

C.    Taylor's Section 502(a)(1)(B) Claim for Benefits

Count II asserts a claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  Section 502(a)(1)(B) allows Taylor "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  Taylor alleges that the "Committee's decision to amend the Plan

to provide for the payment of participant's accrued benefit in a lump sum has resulted, or will result, in Plaintiff incurring a significant taxable event, which when combined with other factors will reduce the value of his accrued benefit under the Plan by approximately 52%." (Id. ¶ 53).  The only other specific factor Taylor alleges in his FAC is a "5% present value reduction factor to calculate the lump sum benefits." (Id. ¶ 51, see also id. ¶ 21).[5]  Taylor claims the Committee's decision adversely affected his benefits in violation of Article X of the Plan, which granted the Committee the right to amend or modify the Plan, provided that "no such action shall adversely affect [a Participant's] accrued benefits . . . ." (Id. ¶¶ 17, 18).

Defendant moves to dismiss Count II on the grounds that the Plan expressly grants the Committee the right to amend or modify the Plan, that tax consequences are not part of an accrued benefit under ERISA, and that Taylor fails to allege any adverse effect arising from NCR's use of a present value reduction factor. (Mot. to Dismiss at 12-18).  The Court agrees.

Plan sponsors have a right under ERISA to terminate or amend plans where that right is reserved in plan documents.  For instance, in Holloman v. Mail-Well

---

[5]     Taylor also references "other actuarial assumptions, which have not been disclosed." (FAC ¶ 51).  The FAC does not specifically allege anything further about the 5% present value factor.

Corp., under similar facts, the Eleventh Circuit granted summary judgment to defendant where it paid plaintiff a lump sum pursuant to plan language granting "[t]he Board . . . the right in its sole discretion to accelerate the payment of any benefits payable under the Plan . . . but the Board shall make no reductions in benefits other than those provided in the Plan, based on the applicable Actuarial Assumptions."   443 F.3d 832, 838 (11th Cir. 2006); see also Alday v. Container Corp. of America, 906 F.2d 660, 666 (11th Cir. 1990) (noting that the plan documents at issue reserved defendant's "right to terminate or modify the plan"); Frankel v. Detroit Med. Ctr., No. 05-40249, 2007 WL 2902897, at *11 (E.D. Mich. Sept. 28, 2007) (plan documents explicitly reserved the right to reduce or terminate benefits under specified conditions even after the payment of benefits had begun).

Taylor does not appear to dispute that NCR had the right to terminate or amend the Plan, and does not challenge any actuarial assumptions.[6]  (See Resp. at 12 ("While NCR has the right to amend or terminate the Plan . . .")).  Instead, he argues that NCR's right is "circumscribed by the limitation that any such amendment cannot 'adversely affect any Participant's . . . accrued benefits prior to

---

[6]    Taylor's allegation that the Plan "specifically precluded the distribution of a participant's vested account balance in the form of a lump sum benefit," (FAC ¶ 16), has no basis in the Plan documents.  There is express language in the Plan authorizing NCR to unilaterally terminate the Plan at any time.  (Mot. to Dismiss at 13, Ex. B).  The power to terminate a plan necessarily implies the power to pay out the benefit in a lump sum upon termination.

such action.'"  (Id.).  Plaintiff alleges that the lump sum "adversely impacted his accrued benefits" because an increased tax liability "reduced his monthly benefit by over 50%."  (Id. at 12-13; Am. Compl. ¶¶ 18-21).

Taylor's adverse effect argument centers on his allegation that the lump sum payment resulted in Taylor "incurring a significant taxable event."  (FAC ¶ 53; see also id. ¶¶ 14, 18, 21).  Courts uniformly have concluded that tax losses do not fall within the relief available to redress a violation of ERISA.  See, e.g., Krawczyk v. Harnischfeger Corp., 41 F.3d 276, 281 (7th Cir. 1994) ("[T]ax losses are extra-contractual and thus, do not fall within the 'appropriate equitable relief' available to redress a violation of ERISA." (citing Novak v. Andersen Corp., 962 F.2d 757, 760-61 (8th Cir. 1992))); see also Skretvedt v. E.I. DuPont De Nemours, 372 F.3d 193, 204 n.15 (3rd Cir. 2004) (dismissing damages claim for "increased tax liability" incurred because of a lump-sum payment, reasoning the claim was "no more than an ordinary claim for [compensatory] money damages" not recoverable as equitable relief under ERISA); Glencoe v. Teachers Ins. & Annuity Ass'n, No. 99-2417, 2000 WL 1578478, at *1 (4th Cir. 2000) (per curiam) (claim for extra tax burden is one for 'extracontractual damages' prohibited under ERISA); Belleville v. United Food and Commercial Workers Intern. Union Indus. Pension

Fund., 620 F. Supp. 2d 277, 281 (D.R.I. 2008) (dismissing claim because "claim for income tax 'reimbursement' is not cognizable under § 502 of ERISA").

The Eleventh Circuit similarly has held that "the various types of relief available to plaintiffs in civil actions brought pursuant to ERISA's civil enforcement scheme do not include extra-contractual . . . damages." Amos v. Blue Cross-Blue Shield of Al., 868 F.2d 430, 431 (11th Cir. 1989).  The Court agrees that an adverse tax impact is not a basis for an ERISA remedy under Section 502(a)(1)(B).[7]

Taylor's only other allegation of an adverse effect on his accrued benefit rests on NCR's purported use of a "5% present value reduction factor to calculate the lump sum benefits."  (FAC ¶ 51, see also id. ¶ 21).  Taylor, however, fails to allege that the present value reduction factor was miscalculated, incorrect, or

---

[7]      Taylor argues that the Plan Administrator "should have considered the tax implications" in "evaluating whether the Plan amendments 'adversely affected' his 'accrued benefit.'"  (Resp. at 15).  He also attempts to avoid the case law barring extracontractual damages by arguing that the appropriate remedy is not damages, but for the Court to "void[] the amendment *ab initio*, reinstating the [pre-amendment] Plan . . . ."  Taylor, however, fails to cite any cases holding that a tax impact is part of an accrued benefit under ERISA that may form the basis for any relief.  To the contrary, case law weighs heavily against a finding that tax impact can be the basis for any ERISA remedy.  See, e.g., Farr v. US West Comm'ns, Inc., 151 F.3d 908, 916 (9th Cir. 1998) ("binding precedent compels us to conclude that Plaintiffs may not recover their tax benefit losses under" ERISA). Further, the FAC explicitly seeks "the full amount of benefits due," not reinstatement of the Plan.  (FAC at 18).

improperly applied.  Taylor appears to allege that the use of the present value

reduction factor was,  in itself, improper because it amounted to a reduction of his

future monthly payments under the plan.  This is incorrect as a matter of law.

In Holloman, the Eleventh Circuit held:

> We cannot accept the contention that the act of discounting
> Holloman's benefit payments to present value necessarily amounted
> to a reduction in benefits.  Discounting to present value is a standard
> way to account for the fact that a dollar amount to be received in the
> future is generally worth less than the same dollar amount received in
> the present. By contending that Mail-Well could not discount future
> payments to present value, the Hollomans are essentially saying that
> the value of any lump-sum payment had to exceed the value of the
> stream of future payments that it was meant to replace.

443 F.3d at 840.  Here, Taylor alleges that "the use of a 5% present value reduction

factor, resulted in a . . . reduction in Plaintiff's monthly pension benefit."  (FAC

¶ 21).  But a present value reduction factor by definition results in a reduction of

future monthly payments, because "a dollar amount to be received in the future is

generally worth less than the same dollar amount received in the present."

Holloman, 443 F.3d at 840.  Taylor fails to allege that the present value reduction

factor was the wrong factor to apply, was miscalculated, or otherwise resulted in

lowering the actuarial value of his benefits.[8]

---

[8]     Taylor's argument that it would cost him more than his post-tax lump sum
to purchase an annuity that would replicate his prior monthly benefit, (FAC ¶ 20),
is unavailing.  The reason an identical annuity would cost Taylor more than his

Taylor argues that the <u>Holloman</u> court addressed a motion for summary judgment, not a motion to dismiss, and therefore its holding does not apply to the present facts.  (Resp. at 13).  The <u>Holloman</u> plaintiffs' claims failed at the summary judgment stage because there was no genuine issue of fact whether the discounting of Holloman's benefit payments to present value amounted to an actuarial reduction in his benefits.  <u>Holloman</u>, 443 F.3d at 840.  Taylor fails to *allege* here that the application of the present value reduction factor resulted in an actuarial reduction in his benefits.[9]  His allegation that the present value reduction factor decreased his future monthly payments is correct, but irrelevant—a present value decrease of future payments is precisely the purpose of applying a present value reduction factor.[10]

----

post-tax lump sum is attributable to the tax consequences to his lump sum—which is not a proper basis for relief—and also reflects the profit premium for the annuity issuer.  Again, Taylor fails to allege that the value of his lump sum payment, excluding any tax consequences, is actuarially less than his accrued benefit.

[9]      Taylor also argues that he should be able to present evidence on summary judgment regarding the issue of whether his lump sum distribution was "actuarially equivalent to his accrued benefit under the Plan."  (Resp. at 14).  As discussed, he has not alleged that his lump sum payment, excluding tax consequences, was not actuarially equivalent to his accrued benefit.  Taylor has not pled a claim for which he can present evidence at the summary judgment stage.

[10]      For the same reasons, Taylor's reference to "other actuarial assumptions" (FAC ¶ 51), cannot save his claim.  Taylor fails to allege that such actuarial assumptions were the wrong assumptions or were otherwise improperly applied.  The mere use of actuarial assumptions (such as a present value reduction)

The Plan expressly grants the Committee the right to amend or modify the Plan, and Taylor cannot maintain a claim under Section 502(a)(1)(B) for the "adverse effect" of tax consequences.  Taylor fails to allege that the application of a present value reduction factor or any other assumption resulted in a lump sum payment that was actuarially less than his accrued benefit under the Plan.  Because Taylor fails to allege any plausible basis for an ERISA remedy under Section 502(a)(1)(B), Count II is required to be dismissed.

Count III of Taylor's FAC asserts a claim for attorney's fees.  (FAC ¶¶ 56-60).  Because Counts I and II are required to be dismissed, Count III must also be dismissed.  See Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 254 (2010) (attorney fees warranted as long as the claimant has achieved some degree of success on the merits); AirTran Airways, Inc. v. Elem, 767 F.3d 1192, 1201 (11th Cir. 2014) (same).[11]

## III.   CONCLUSION

For the foregoing reasons,

---

necessary to calculate a lump sum payment does not provide Taylor with a basis for an ERISA remedy.

[11]      Because Taylor's claims are required to be dismissed, the Court does not reach the issue whether NCR Corporation and The Retirement Plan for Officers of NCR are proper defendants in this case.

**IT IS HEREBY ORDERED** that NCR's Motion to Dismiss [7] is

**GRANTED**.


**SO ORDERED** this 23rd day of September 2015.

 

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE